Filed 11/28/23  P. v. Guzman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E079021 |
| v. | (Super.Ct.No. INF1500253) |
| SERGIO LOPEZ GUZMAN, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge.

Affirmed in part, vacated in part, and remanded with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Kristen Ramirez, Deputy Attorneys General, for Plaintiff and Respondent.

Sergio Guzman was convicted of six counts of robbery and one count of active gang participation. (Pen. Code, §§ 211, 186.22, subd. (a); unlabeled statutory citations refer to this code.) As to the robbery counts, the jury found true the allegations that Guzman committed the offenses for the benefit of a criminal street gang, that he personally used a firearm, and that a principal used a firearm. (§§ 186.22, subd. (b), 12022.53, subds. (b), (e).)

On appeal, Guzman contends that the judgment must be reversed because of changes to the law made by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333). First, he argues that under the new law's amendments to section 186.22 there is insufficient evidence to support the conviction on the gang offense and the true findings on the gang-related enhancements (i.e., the gang enhancements and the principal-use enhancements). Second, he argues that the robbery convictions also cannot stand because the trial court's failure to try those offenses apart from the gang-related charges was prejudicial error under section 1109, which was added by Assembly Bill 333. The People agree with the first argument but not the second.

We agree with the parties regarding Guzman's first argument, but we reject his second argument because the failure to bifurcate under section 1109 was harmless. We therefore vacate the conviction on the gang offense and the true findings on the gang-related enhancements, vacate the sentence, and remand for further proceedings. We otherwise affirm the judgment.

BACKGROUND

A.     *The Robberies*

Guzman committed a string of robberies in Cathedral City with his two minor codefendants—A.T. and E.H.—and other fellow members of the local criminal street gang "Barrio Dream Homes."[1] The group's first victim, Ismael D., lived in an apartment with his wife and her parents. Shortly after midnight, as Ismael was walking to his garage, he noticed a black Chevrolet Silverado truck driving by at a slow pace. The truck's driver, whom Ismael identified at trial as Guzman, was wearing a hat with the letter "D" on it. Guzman was staring at Ismael, prompting Ismael to ask if there was something he could do to help. Guzman stopped the truck and responded, "Oh, you think you're gangster?"

Guzman then got out of the truck, lifted up his shirt to show Ismael that he had a gun, and approached Ismael. Guzman said "You think you're gangster? You think you're hard?" and asked if Ismael knew anyone from "Cathedral City," a question Ismael understood to be about gang affiliation. When Ismael responded that he did not know any gang members, A.T. and E.H. got out of the truck and joined Guzman. A.T. demanded that Ismael empty his pockets, and E.H. struck Ismael in the face with a shotgun.

---

[1] E.H.'s appeal was the subject of our decision in *People v. E.H.* (2022) 75 Cal.App.5th 467 (*E.H.*).

At that point, additional individuals armed with weapons exited the truck while Guzman pointed his gun at Ismael and told him to "hurry up." Ismael complied and handed over his phone and driver's license. Guzman hit Ismael in the face with his gun, and the rest of the group then joined in and started kicking Ismael and beating him with their weapons. During the attack, Ismael was able to reach his doorstep and ring the doorbell with his elbow. Ismael's wife woke up and saw what was happening through the window. She yelled that she was calling the police, and the group fled.

Next, the group went to Duane S.'s apartment and entered with guns drawn as Duane, his girlfriend (Allison W.), and his brother were drinking and recording rap music on an electronic tablet. The intruders demanded that everyone get down and empty their pockets. Guzman announced that he was from Barrio Dream Homes and was there to collect money that Duane owed to Guzman's "brother," another member of the gang. Both Duane and Allison knew who Guzman was because they had seen him on previous occasions, and they immediately recognized him.

Guzman pointed his gun at Duane, said "Where's my fucking brother's money?" and struck Duane three times in the head with the butt of his gun. Guzman took $40 from Duane and pistol whipped Allison in the head. After threatening to kill Duane and Duane's entire family if they notified the police, Guzman yelled "Dream Homes!" One of the intruders took the tablet that the victims had been using.

Guzman and his confederates then kicked down the locked door to the bedroom where Allison's son and two of his friends were playing video games. The intruders

4

pointed their guns at the boys and told them to empty their pockets. The group took several items from the boys, including the gaming system and the TV, and one of the intruders hit one of the boys in the face with a pistol.

B.    *The Investigation*

On the basis of Ismael's description of the perpetrators' truck, the police located the group driving down a Cathedral City street shortly after the robberies. Guzman refused to pull over and led the police on a chase until he crashed the truck. Guzman and his associates fled on foot and were able to escape, with the exception of E.H., whom police found crouched in a bush, in possession of a cell phone that belonged to one of the victims. Inside the truck, the police found the guns used in the robberies, the stolen property, the hat that Ismael had seen Guzman wearing, a receipt bearing Guzman's name, and Guzman's fingerprints. The tablet, which had been recording the entire time, contained an audio recording of the robberies at Duane's apartment, the group's conversations in the truck afterward, and the police pursuit. On the recording, which was played for the jury at trial, one of the perpetrators yells "Where the fuck is my brother's money?" and E.H.'s first name can be heard at various points.

Approximately one month after the robberies, Guzman was extradited from Florida to face the charges in this case.

C.    *Verdicts (from the First and Second Trials) and Sentencing*

The jury found Guzman guilty of five counts of home invasion robbery in concert (§ 213, subd. (a)(1)(A)), one count of second degree robbery (§ 211), and one count of

5

active gang participation (§186.22, subd. (a)).  As to the robbery counts, the jury found true the allegations that Guzman committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)), that he personally used a firearm (§ 12022.53, subd. (b)), and that a principal used a firearm (§ 12022.53, subd. (e)).

Before sentencing, Guzman moved for a new trial on the gang offense and the six gang enhancements on the basis of the prosecution's posttrial disclosure that, after the preliminary hearing but before trial, their gang expert had been removed from the Cathedral City Police Department's gang unit because of timecard fraud.  Apparently through inadvertence, defense counsel failed to move for a new trial on the principal-use enhancements under section 12022.53, subdivision (e), which depend on a finding that the principal committed an enumerated offense (here, robbery) for the benefit of a criminal street gang.  (§ 12022.53, subd. (e)(1)(A).)  The court granted the motion, and the jury at the second trial found Guzman guilty of the gang offense and found the gang allegations true.

At sentencing, the trial court imposed a total sentence of 41 years and eight months in prison for the robbery counts and the personal-use enhancements, and it stayed the sentences for the substantive gang offense and the six gang enhancements.  Also apparently through inadvertence, the court neglected to impose or stay the sentences for the principal-use enhancements (§ 12022.53, subd. (e)) from the first trial.

6

DISCUSSION

A.    *Section 186.22*

The parties agree that Assembly Bill 333's amendments to section 186.22 apply retroactively to this case and that under the new law the evidence is insufficient to support Guzman's conviction for active participation in a criminal street gang and the 12 gang-related enhancements (i.e., the six gang enhancements and the six principal-use enhancements).  We concur.

1.  *Relevant Background*

Detective Jeff Blachley of the Cathedral City Police Department testified as the People's gang expert at Guzman's second trial.  Blachley testified that Barrio Dream Homes has about 20 to 30 members and is one of two main gangs in Cathedral City, the other being Barrio Dream Homes' rival, Barrio Cathedral City.  Barrio Dream Homes' primary activities include vehicle theft, robbery, assault with firearms, murder, and illegal possession of firearms.  Members of the gang charge a "tax" for drug sales made within their territory, and there are consequences if someone fails to pay a debt.  The letter "D" is one of the gang's symbols.  Blachley identified four "predicate offenses" for which four different Barrio Dream Homes members were convicted:  a robbery for which Diego Loya was convicted in 2014, a grand theft from a person for which Anthony Vivanco was convicted in 2014, and a grand theft from a person for which Samuel Reyes was convicted in 2013.

7

Blachley opined that Guzman and his codefendants A.T. and E.H. were members of Barrio Dream Homes. According to Blachley, Barrio Dream Homes controlled the geographic area where Duane's apartment was located, whereas the gang's rival, Barrio Cathedral City, controlled the area where Ismael lived. Given a hypothetical fact pattern based on the charged robberies, Blachley opined that the offenses were committed for the monetary and reputational benefit of Barrio Dream Homes.

### 2. *Applicable Law*

"Section 186.22 makes it a crime to actively participate in a 'criminal street gang,' and the statute provides for enhanced punishment when a defendant is convicted of an enumerated felony committed 'for the benefit of, at the direction of, or in association with any criminal street gang.'" (*E.H.*, *supra*, 75 Cal.App.5th at p. 476, citing former § 186.22, subds. (a), (b)(1).) Assembly Bill 333 made numerous ameliorative changes to section 186.22 that took effect after Guzman's second trial but before his sentencing, and because the judgment in this case is not final, those amendments apply. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).)

As relevant here, Assembly Bill 333 made the following changes to section 186.22: First, "whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.)" (*Tran*, *supra*, 13 Cal.5th at p. 1206.) Second, the new law "narrowed the

8

definition of a 'pattern of criminal [gang] activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).)" (*Ibid.*) Finally, Assembly Bill 333 "narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*Tran*, at p. 1206.)

Those new definitions of "criminal street gang," "pattern of criminal gang activity," and "common benefit" added elements to the substantive gang offense and gang-related enhancements that did not exist at the time of Guzman's second trial. (*E.H.*, *supra*, 75 Cal.App.5th at p. 479.) As a result, the People were not required to prove those additional elements, and the court did not instruct the jury on them. In such cases, we must reverse unless "'it appears beyond a reasonable doubt' that the jury verdict would have been the same in the absence of the error." (*Tran*, *supra*, 13 Cal.5th at p. 1207.)

3. *Analysis*

On this record, we cannot conclude that the failure to require proof of the new elements was harmless beyond a reasonable doubt. As the People acknowledge, Blachley testified that, because of the violent way in which the robberies were committed and the perpetrators' references to Barrio Dream Homes during the offenses, the robberies would

9

have enhanced the gang's reputation for violence. The People also acknowledge that there was no evidence that the predicate offenses were committed by two or more gang members or that those offenses provided a common benefit to the gang. Because of those deficiencies in the evidence, the failure to require proof of the new elements was not harmless.

"The proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges" and enhancement allegations. (*E.H.*, *supra*, 75 Cal.App.5th at p. 480.) We therefore vacate Guzman's conviction under section 186.22, subdivision (a), and the true findings under section 186.22, subdivision (b), and remand for further proceedings.

In addition, we agree with the parties that the principal-use firearm enhancements (§ 12022.53, subd. (e)) are also affected, because the enhancement statute expressly incorporates section 186.22. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 346-348.) Subdivision (d) of section 12022.53 provides for a 25-years-to-life enhancement for any person who "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death" during the commission of any felony listed in subdivision (a). Subdivision (e)(1) of section 12022.53 "imposes vicarious liability" for all of the statute's enhancements on any person who aids and abets the enumerated offense under gang-related circumstances. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1171.) That is, the statute imposes the 25-years-to-life enhancement on any principal

who "violated subdivision (b) of section 186.22" if at least one principal in the offense personally used a firearm as defined in subdivision (d). (§ 12022.53, subd. (e)(1)(A), (B).) Thus, because the principal-use enhancement requires proof of the new elements of the gang enhancement, Assembly Bill 333's changes to section 186.22 require us to vacate the true findings on those enhancements as well. (*Lopez*, at pp. 347-348.) On remand, the People shall have the opportunity to retry the gang offense and the gang and principal-use enhancements.

B.     *Section 1109*

In addition to the substantive changes to section 186.22, Assembly Bill 333 added section 1109, which requires the court to bifurcate the trial of any gang enhancements "[i]f requested by the defense." (§ 1109, subd. (a).) Additionally, subdivision (b) of the statute requires trial courts to try the substantive offense of gang participation "separately from all other counts that do not otherwise require gang evidence as an element of the crime," whether or not requested by the defense. (§ 1109, subd. (b).)

Guzman contends that the failure to try the robbery charges separately from the gang charge and the gang enhancement allegations requires us to vacate his robbery convictions. The People respond that section 1109 does not apply retroactively to this case and that, in any event, the failure to bifurcate was harmless given the overwhelming evidence of Guzman's guilt on the robbery charges. We agree that the failure to bifurcate was harmless.

11

1. *Relevant Background*

Officer Alfredo Luna of the Cathedral City Police Department testified as the People's gang expert at Guzman's first trial. Luna's testimony describing Barrio Dream Homes and its members, territory, primary activities, and rival (Barrio Cathedral City) was similar to Blachley's testimony at Guzman's second trial. Luna testified that if someone owes a debt to the gang, then the members of the gang will assault or steal from that person in retaliation for the unpaid debt. He also testified that members of Barrio Dream Homes will "hit up" a person by asking where they are "from" in order to determine the person's gang affiliation. Like Blachley, Luna opined that the robberies were committed for the monetary and financial benefit of Barrio Dream Homes.

Other officers from the Cathedral City Police Department testified as to various contacts they had with other Barrio Dream Homes members. One officer said that in 2012 he found a firearm magazine (but no gun) after conducting a search of a car occupied by three members of the gang. Another officer said that he detained a group of Barrio Dream Homes members after he saw one of them hide a loaded semiautomatic pistol in a bush. As for predicate offenses, the People presented evidence of the three offenses used in the second trial, plus an attempted murder conviction and juvenile adjudications for burglary and assault with a deadly weapon. Guzman was not involved in any of the predicate offenses.

2. *Analysis*

There is a split of authority among our appellate courts concerning whether section 1109 applies retroactively to cases with nonfinal judgments, and the issue is currently pending before the California Supreme Court. (Compare *People v. Perez* (2022) 78 Cal.App.5th 192, 207 [section 1109 applies prospectively only], review granted Aug. 17, 2022, S275090, with *People v. Burgos* (2022) 77 Cal.App.5th 550, 565-567 [section 1109 applies retroactively under *Estrada*], review granted July 13, 2022, S274743.) We need not address the issue to resolve Guzman's challenge because, even if we assume section 1109 applies retroactively, he cannot demonstrate that he was prejudiced by the failure to bifurcate the gang charge and the gang enhancement allegations. (See *Tran*, *supra*, 13 Cal.5th at p. 1208.)

Guzman contends that the failure to bifurcate is reversible per se. The argument is foreclosed by our Supreme Court's decision in *Tran*, which held that such a failure does not constitute structural error. (*Tran*, *supra*, 13 Cal.5th at p. 1210.)

We also reject Guzman's claim that the failure to bifurcate requires reversal unless it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) "'[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*.'" (*People v. Tran*, *supra*, 13 Cal.5th at p. 1209.) In this case, the prosecution's gang evidence did not render the trial fundamentally unfair. Much of the gang evidence was also admissible to

13

demonstrate guilt, and the gang evidence not relevant to guilt was not so voluminous or inflammatory that it altered the nature of the trial.

Accordingly, we apply the *People v. Watson* (1956) 46 Cal.2d 818 standard, which requires Guzman to establish that it is reasonably probable that he would have obtained a more favorable result if the robbery charges had been tried separately from the gang charge and the gang enhancement allegations. (See *Tran*, *supra*, 13 Cal.5th at p. 1209 [applying *Watson*]; see also *People v. Session* (2023) 93 Cal.App.5th 723, 734 [same].) Guzman has not carried that burden.

A significant amount of the evidence regarding Barrio Dream Homes and Guzman's gang membership was relevant to the robbery charges because Guzman himself injected his gang status into the robberies. Guzman confronted Ismael by asking him a series of gang-related questions, and when Guzman entered Duane's apartment, he identified himself as a gang member and used that status to demand money from Duane. Luna's expert testimony regarding hit ups and debt repayment helped the jury to understand that Guzman's conduct was not only gang-related but also probative of both motive and the use of fear, which is an element of robbery. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1050 (*Hernandez*) [failure to bifurcate was harmless where "[m]uch of the gang evidence . . . was relevant to the charged offense"].)

In evaluating the prejudicial effect of the gang evidence that was unrelated to the robbery charges, we consider whether the evidence supporting the verdict "'is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively*

14

weak, that there is no reasonable probability the error of which the defendant complains affected the result.'" (*People v. Rogers* (2006) 39 Cal.4th 826, 870.)  The evidence that Guzman committed the charged robberies was overwhelming.  At trial, Ismael identified Guzman as one of the perpetrators, as did Duane and Allison, who were familiar with Guzman before the incident and whose descriptions of the home invasion were corroborated by the tablet recording.  In addition to those eyewitness identifications, the truck that the perpetrators were driving on the night of the robberies contained ample evidence linking Guzman to the robberies.  His fingerprints were found inside the truck, along with the stolen property, one of his receipts, and the hat that Ismael said Guzman was wearing during the robbery.  Given the strength of all of that incriminating evidence, it is not reasonably likely that Guzman would have obtained a more favorable verdict on the robbery charges in the absence of the evidence of the uncharged crimes committed by other members of Barrio Dream Homes.  (See *Hernandez*, *supra*, 33 Cal.4th at p. 1051.)

Finally, the jury was given a limiting instruction regarding its consideration of the gang evidence, and we presume the jury followed that instruction.  (See, e.g., *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132.)  For all of these reasons, we conclude that the failure to bifurcate was harmless.

C.     *Guzman's Remaining Claims Are Moot*

Guzman makes three additional claims of error, all of which relate to sentencing. First, he argues that the trial court erred under subdivision (c)(2)(C) of section 1385 by failing to dismiss his personal-use enhancements, because their "application . . . could

15

result in a sentence of over 20 years."  Second, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, he argues that the court erred by imposing a restitution fine, a court operations assessment fee, and a criminal conviction assessment fee without first determining his ability to pay them.  And third, he argues, and the People correctly concede, that the original and amended sentencing minute orders incorrectly state that he suffered a prior strike conviction.

Because we are vacating Guzman's sentence, those claims are moot.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].)  At his resentencing, Guzman may ask the trial court to exercise its discretion under section 1385 to dismiss his personal-use enhancements.  (See generally *People v. Mendoza* (2023) 88 Cal.App.5th 287, 294-297 & fn. 6 [describing the scope of the trial court's discretion to dismiss an enhancement "in furtherance of justice" under section 1385]).  He may also object to any fines and fees on the ground that he lacks the ability to pay.  And finally, we need not order correction of the sentencing minute orders because they will be superseded by the new sentencing minutes issued after resentencing.  The trial court should ensure that the new sentencing minutes do not contain the error noted above.

### DISPOSITION

We vacate the conviction under section 186.22, subdivision (a); the true findings on the gang enhancements under section 186.22, subdivision (b); the true findings on

16

principal-use enhancements under section 12022.53, subdivision (e); and the sentence. We remand to the trial court to give the People the opportunity to retry the gang offense and the gang enhancements under the new law as amended by Assembly Bill 333 and then to resentence Guzman.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

McKINSTER

        Acting P. J.

RAPHAEL

        J.